NEW YORK,
May, 1812.

WELLS
v.
LANE.

*Parol decla-*
*rations made*
*more than 20*
*years ago, by*
*the owner of*
*a slave, that*
*he purchased*
*her to make*
*her free, and*
*that he meant*
*her to be freed,*
*were held to*
*be a manu-*
*mission of such*
*slave.*
*Whether,*
*since the sta-*
*tute of 8th*
*April, 1801,*
*(sess. 24. c.*
*188.) a slave*
*can be manu-*
*mitted with-*
*out some in-*
*strument in*
*writing?*
*Quære.*

## WELLS *against* LANE.

IN error, on *certiorari*, from a justice's court.

*Lane* brought an action of debt against *Wells*, before the jus-tice, for two penalties of 12 dollars and 50 cents each, under the act concerning slaves, for harbouring the slave of the plaintiff, named *Betty*, on the 8th and 9th days of *November*. The plain-tiff, who was a free black, proved that he purchased *Betty* and her mother, about 24 years ago, and that he married the mother when *Betty* was about a year old. *Betty* and her mother were born slaves. The plaintiff declared to one witness, that he had purchased his wife and child from bondage, and that they were received among their society (quakers) as free persons ; that he had paid a trifling sum for them, because he had purchased them from bondage into freedom. The plaintiff knew that neither slaves, nor slaveholders could be admitted in the society, and while the plaintiff and his family were in the society, they were considered as children and not as slaves. To another witness he expressed a determination to have a free family, and said that his wife had assisted in procuring her and her daughter's freedom, and that he always called *Betty* his child.

The only proof, as to the harbouring, was, that the witness was requested by the plaintiff to warn the defendant from detaining *Betty*; and the defendant replied, that he considered her free ; and that the defendant admitted that *Betty* was in his house or family, or something to that effect; that when the defendant was warned not to keep *Betty*, he said she might go, but he could not conscientiously turn her away. The jury found a verdict for the plaintiff, for 25 dollars, on which the justice gave judgment.

*Per Curiam.* In determining whether the negro woman, *Betty*, is to be considered the slave of the plaintiff below, we must look at the law, as it stood at the time of the purchase, which appears to have been upwards of twenty years since. Our present sta-tute relative to manumissions, would seem to require a certificate, or some instrument in writing, for that purpose. And such was the construction intimated by the court, in the case of *Keteltas* v. *Fleet*. (7 *Johns. Rep.* 330.) The words of the statute are, that it shall be lawful for the owner of any slave, to manumit such slave,

*by last will or testament, or by any certificate or writing for that purpose.* (1 *Rev. Laws*, 612.) These terms are more limited than those used in the statute of 1788, (2 *Greenleaf's* edit. *Laws*, 88.) which are, that if any person shall by last will or *otherwise*, manumit or set free his slave, such slave shall be considered as freed from such owner. And the provision, in the 3d section of the present statute, was intended to confirm manumissions informally made. It declares, that all the manumissions of slaves made by the people called quakers, and others, before the 9th day of *March*, 1798, although not in strict conformity to the statutes then in force, relating to such manumissions, shall be valid from the time they were made. It would not be giving to this provision its due effect and operation, to consider no manumission valid, unless it was in writing. And if *parol* manumissions were binding, the plaintiff's declarations fully show that he never considered *Betty* as his slave, nor did he purchase her as such. He declared that her former master would not give him a bill of sale of her or her mother, for fear he might abuse or sell them. That he gave a trifling sum for them, because he purchased them from bondage into freedom. That they were received among their society, as free persons; and that he had always called *Betty* his child. After such declarations and such a lapse of time, to authorize the plaintiff to claim her as his slave, would be extremely unjust; and unless she was his slave, there is no ground upon which he could maintain the action; for she certainly was not a servant, in any other respect, within the meaning of the statute. The judgment must, therefore, be reversed.

Judgment reversed.