SMITH <em>against</em> HOFF.

ASSUMPSIT, on a promissory note, made by the defendant, payable to the plaintiff. The consideration was a negro man, purchased by the defendant of the plaintiff, *February 15th*, 1815.

In 1800, the plaintiff and *Peter Smith* owned the negro. He asked permission to work for his freedom; for which they agreed to take £80, payable in 3 years; and that he might earn the money by his labour, and pay it over to one *Harden*. He accordingly left their service, and afterwards paid $31,75, previous to *Feb. 19th*, 1801. Nothing more being paid, the plaintiff ordered him to return to his service. He refused to obey, and was confined in gaol. While there, the plaintiff sold him to the defendant. He never lived with the plaintiff, or *P. Smith*, since he first left them, but

*An agreement, by a master, with his slave, that he may work out his freedom, by earning and paying 80l. tho' the slave leave his service, and actually earn and pay a part of the money, and refuse to return on being ordered back by his master, for default of paying the residue, does not amount to a manumission.*

Such an agreement is conditional, and does not take effect till the whole consideration be paid.

*El semble*, that such an agreement, though not in writing, is valid, and, if performed, will work a manumission.

The purpose of a written manumission, &c. is to avoid being answerable for the future support of the slave.

Evidence, that a negro, being imprisoned in New-York, as a slave, claimed his freedom, and was liberated, as a freeman, by the police of the city, is not admissible against the master.

Whether the declarations of a negro are evidence for the master, to prove the negro his slave, in an action to recover his price of a purchaser? Quere.

*El semble*, they are.

once went to them, from gaol, and said he wanted to find another master. To the declarations of the negro the defendant objected, but they were admitted by the Judge, as evidence. It appeared that eleven or twelve years before the trial, (1819) he was committed to gaol by the plaintiff, and then let out on his promise to fulfil a contract, or pay a sum of money. The defendant offered to prove, that, in 1816, the negro ran away, was arrested in New-York, and that, claiming to be free, he was taken before the police, and there liberated, on the ground that the contract was a manumission ; of which the defendant gave the plaintiff notice. On objection, this evidence was overruled. The plaintiff proved, that when he was sold to the defendant, he promised to serve him faithfully, and urged the defendant to buy him ; that the plaintiff had imprisoned him twice before, and let him go on his promise to pay the money.

This cause was tried at the *Columbia Circuit*, before his honour VAN NESS, late J. and a verdict taken for the plaintiff, subject to the opinion of the Court on the above case, &c.

*T. Bay*, for the plaintiff, insisted, that a manumission, in order to be effectual, must be in writing.(a) But if it may be by parol, the manumission, in this case, was conditional, depending on the payment of the £80, which never was made.

*D. Cady*, contra, insisted, 1. That the declarations of the negro, *that he wanted to find another master*, ought not to have been admitted. If a freeman, his declarations could not prove him to be a slave. If a slave, he could not be a witness, and his declarations were, therefore, inadmissible.

2. The agreement amounted to a manumission. He must have had the rights of a freeman, to enable him to fulfil the contract. He must have been able to make contracts to work for whom he pleased, for such wages as he pleased, and to collect the money which he earned. These rights were inconsistent with a state of slavery. By the act of 1788,(b) a master, by will or *otherwise*, might manumit his slave. This need not have been in writing.(c) The act of

(a) 2 R. L. 202, s. 3. Vid. also, *the act of* 1799, *continuation of Green-leaf's ed. by C. R. & Geo. Webster, ed. of* 1800, *p.* 524, *sess.* 22, *ch.* 62, *s.* 6.

(b) 2 Greenleaf, 88.
(c) 9 John. 144.

1799, cited for the plaintiff, was intended to authorise such a manumission in writing, as to relieve the slaveholder from the burthen of supporting his slave, should he eventually become a pauper ; but did not repeal the last section of the act of 1788. In this case, the negro had enjoyed all the rights of a freeman, for about 15 years before the sale. When put in gaol, it was as a *debtor.* He was let out on his promise to pay. These circumstances ought to be conclusive evidence of a manumission. A man cannot, after six years, recover an *ox* or a *horse,* which has been in possession of another ; much less ought he to be permitted to reclaim a *man,* who has been free for 15 years.

*Curia, per* WOODWORTH, J. It is contended on the part of the defendant, that the agreement was a manumission ; that to enable the negro to perform his part of the contract, it was necessary he should have all the rights of a freeman, so as to be capable of making contracts, working for whom he pleased, and collecting his wages. If it is to be understood, that the plaintiff actually parted with his right to the services, in consideration of the promise to pay £80, within three years, I incline to think it would be a manumission ; but I do not understand the agreement in this manner ; it was evidently conditional. If the money was paid, the plaintiff was willing to give him his freedom ; he did not intend to relinquish his hold. He consented that he might earn the money by his labour, and pay it over ; or, in other words, the master agreed to apply the money to pay the price of his freedom.

This case is analogous to that of *Kettletas* v. *Fleet,* (7 *John.* 324,) where the owner of a slave gave a written promise to manumit him in eight years, on condition of his faithful service during that period ; it was held to be a conditional manumission, obligatory on the master, and of which the slave might avail himself on the performance of the condition. By the act relative to manumissions, the owner may manumit a slave, by last will or testament, or by any certificate or writing for that purpose. (1 *R. L.* 612, *K. & R.* 1801.) The cases decided since the passing of that statute,

NEW-YORK,
May, 1823.

SMITH
v.
HOFF.

seem to consider a writing as necessary, to render the manumission obligatory. (9 *John.* 144, *Wells* v. *Lane.* 14 *John.* 324.)   But this agreement was made in 1800.   By the act of 1788, (2 *Vol. Green. ed.* 88,) a master, by will *or otherwise,* might manumit a slave, but the owner remained liable to support him, if he became unable to maintain himself. By the act for the gradual abolition of slavery, *March* 29, 1799, it is declared that the owner of a slave, immediately after the passing of that act, may manumit such slave by a certificate under his hand and seal.   The probable intention of this section, was to authorise the owner to manumit so as not to be answerable for his support ; be that as it may, there is nothing to restrict the form of manumitting to that of a certificate ; it does not repeal the section of the act of 1799, " by will or otherwise," which admits of a parol manumission : the objection of the plaintiff, ont his ground, cannot be supported.   The evidence offered to prove that the negro was liberated by the police in *New-York,* was clearly inadmissible ; it was an *ex parte* proceeding, of which the plaintiff was not bound to take notice.

On the whole, I am of opinion, that the negro continued a slave, not having complied with the agreement, upon which his emancipation depended.   The plaintiff is entitled to judgment.

Judgment for the plaintiff.

END OF MAY TERM.